IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TITLEMAX OF ALABAMA, INC., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | CIV. ACT. NO. 1:21-cv-432-TFM-B |
| | ) | |
| DAVID L. GRAHAM, *et al.*, | ) | |
| | ) | |
| Appellees. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Appellant TitleMax of Alabama, Inc.'s, appeal of the Memorandum Opinion and Order that was entered by the United States Bankruptcy Court for the Southern District of Alabama on September 14, 2021, in which Appellant's Objection to Confirmation was overruled.[1]  Doc. 1.  Having considered the record, the parties' briefs, and relevant law, the Court finds the decision of the Bankruptcy Court is due to be **AFFIRMED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On June 2, 2021, Appellee Margaret Graham entered into a pawn agreement with Appellant TitleMax of Alabama, Inc. ("TitleMax").  Doc. 3 at 89-96.  Mrs. Graham pawned her 2013 Ford Explorer for $9,960.04 and agreed she could redeem the vehicle on or before July 2, 2021, the maturity date, for a payment of $11,054.65, which consisted of the principal plus a $1,094.61 pawnshop charge.  *Id.* at 89-90.

The Pawn Ticket and Security Agreement ("the Agreement") included additional terms:

**3.       Possession of the Title:**  You agree that we shall hold the Title for the entire

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 158, which provides that the district courts of the United States "shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges."

length of this Agreement.  You have the exclusive right to redeem the Title by repaying the Pawn in full and complying with this Agreement.  When you satisfy all outstanding obligations pursuant to this Agreement and Alabama law and you present suitable identification to us, you may redeem the Vehicle and/or Title. When you redeem the Title, we will release the security interest in the Vehicle and return the Title to you.

. . .

**5.      Funding; Prepayment, Payments, and Application of Payments; Renewal:** . . . If you do not redeem the Vehicle, you may request that we enter into a new payment transaction with you.  We may agree to do so in our discretione
**6.      Non-Recourse; Delinquent Payment and Additional Pawnshop Charges; Nonpayment and Failure to Redeem:** . . . You shall have no obligation to redeem the Vehicle or make any payment on this Pawn.  Nothing in this Agreement gives us any recourse against you personally other than our right to take possession of the Vehicle upon your default, and to sell or otherwise dispose of the Vehicle in accordance with the Alabama Pawn Shop Act. . . .

If you fail to redeem the Vehicle within 30 days following the Maturity Date hereunder, and you do not pay accrued and outstanding charges and enter into a new Pawn Ticket and Security Agreement with us, then the Vehicle shall be forfeited to and absolute right, title, and interest in and to the Vehicle shall vest in Lender.

. . . .

**8.      Default and Repossession:** If you fail to timely pay any amount payable hereunder when due, then your account will be in default. . . . We may take possession of the Vehicle upon your default. . . . We may not sell the Vehicle before the 30th day following the Maturity Date.
**9.      Lost Pawn Ticket:** Any person properly identified as Pledgor or as your authorized representative and presenting this Agreement to Lender shall be entitled to redeem or repurchase the pledged Vehicle.  If you lose this Agreement or other evidence of the Pawn, you do not have the right to redeem the pledged Vehicle.

. . .

**IMPORTANT ALABAMA DISCLOSURES**

. . .

**(3)      The item pawned is redeemable only by the bearer of this ticket.**

*Id.* at 90-91, 95.

On June 11, 2021, prior to the maturity date, Appellees David L. Graham and Margaret F.

Graham (collectively, "the Grahams") filed their petition for bankruptcy under Chapter 13 of the Bankruptcy Code. *Id.* at 13, 15-70. On the same date, the Grahams filed their Chapter 13 Plan in which they listed TitleMax as one of their secured creditors and proposed to pay TitleMax as a secured creditor over the sixty-month terms of the plan. *Id.* at 72. On June 17, 2021, the Grahams filed an amended Chapter 13 Plan that TitleMax states "did not materially change the proposed treatment of TitleMax." Doc. 7 at 11; Doc. 3 at 79.

On August 25, 2021, TitleMax filed its Objection to Confirmation. Doc. 3 at 83-87. On September 14, 2021, the Bankruptcy Court entered its Memorandum Opinion and Order in which it overruled TitleMax's Objection to Confirmation. Doc. 3 at 97-102.

On September 29, 2021, TitleMax filed its notice of appeal to the Bankruptcy Court's September 14, 2021 Memorandum Opinion and Order, and the appeal was docketed with this Court on October 4, 2021. Doc. 1; Doc. 3 at 14. The record on appeal was docketed on November 12, 2021, the Clerk of Court certified the record was complete for purposes of appeal, and a briefing schedule was entered. Docs. 3, 5, 6. TitleMax filed its brief, the Grahams filed their brief in response, and TitleMax filed its reply. Docs. 7, 8, 9. The issues on appeal are fully briefed and ripe for review. Further, the Court finds oral argument unnecessary.

## II.   STANDARD OF REVIEW

"[A] district court in a bankruptcy appeal . . . functions as an appellate court in reviewing the bankruptcy court's decision." *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990) (citing 28 U.S.C. § 158(a), (c)). The district court reviews *de novo* determinations of law by the Bankruptcy Court. *In re Optical Tech., Inc.*, 246 F.3d 1332, 1335 (11th Cir. 2001); *In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th 1994) (citing *In re Sublett*, 895 F.2d at 1383).

"The district court makes no independent factual findings" and "review[s] solely the

bankruptcy court's factual determinations under the 'clearly erroneous' standard." *Id.* (citations omitted); *see also* FED. R. BANKR. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). "The bankruptcy court's findings of fact are not clearly erroneous unless, in light of all the evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Int'l Pharmacy & Discount II, Inc.*, 443 F.3d 767, 770 (11th Cir. 2005) (citing *In re Cox*, 338 F.3d 1238, 1241 (11th Cir. 2003)); *see also Crawford v. W. Elec. Co.*, 745 F.2d 1373, 1378 (11th Cir. 1984) ("A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed." (quotation omitted)).

## III.  DISCUSSION AND ANALYSIS

TitleMax presents six issues on appeal: (1) whether the Bankruptcy Court erred in overruling TitleMax's Objection to Confirmation; (2) whether the Bankruptcy Court erred in applying to this case *In re Womack*, 616 B.R. 420 (Bankr. M.D. Ala. 2020), *aff'd*, -- F. App'x --, 2021 U.S. App. LEXIS 26127, 2021 WL 3856036 (11th Cir. Aug. 30, 2021) (per curiam); (3) whether the Bankruptcy Court erred in holding that a debtor who is "not in default on a title loan as of the bankruptcy petition date may modify the pawnbroker's rights in a Chapter 13 plan;" (4) whether the Bankruptcy Court erred in holding that by filing her bankruptcy petition prior to the maturity date of her pawn agreement, section 108(b) did not apply, and the Grahams' (and their Estate's) time to redeem the vehicle did not continue to run; (5) whether the Bankruptcy Court erred in holding the vehicle was not forfeited to TitleMax upon expiration of the redemption period (as extended by 11 U.S.C. § 108(b)); and (6) whether the Bankruptcy Court erred in holding the

pawn agreement and TitleMax's interest in the vehicle could be modified pursuant to 11 U.S.C. §
1322(b).  Doc. 7 at 8.  TitleMax states the issues that it presents on appeal are exclusively legal
determinations and there are no factual disputes.  *Id.* at 9.

Like the situation for *In re Womack*, "[t]his appeal presents the issue whether a debtor who
declares bankruptcy under Chapter 13 of the Bankruptcy Code before defaulting on a title loan
under the Alabama Pawnshop Act [("APA")], ALA. CODE § 5-19A-1 *et seq.*, can modify the
pawnholder's rights in the plan of reorganization, 11 U.S.C. § 1322(b)(2)." 2021 U.S. App. LEXIS
26127, at *1, 2021 WL 3856036, at *1.

Under the Bankruptcy Code, "[p]roperty of the estate is defined broadly to include 'all
legal or equitable interests of the debtor in property as of the commencement of the case.'" *In re
Lewis*, 137 F.3d 1280, 1283 (11th Cir. 1998) (quoting 11 U.S.C. § 541(a)(1)).  "[T]he term
'commencement' means the date on which the debtor filed [her] bankruptcy petition." *In re
Northington*, 876 F.3d 1302, 1309 (11th Cir. 2017).  "[W]hether a debtor's interest constitutes
'property of the estate' is a federal question, . . . however, the nature and existence of the debtor's
right to property is determined by looking at state law." *In re Lewis*, 137 F.3d at 1283 (internal
quotation marks omitted).

Under the APA, a pawn transaction is defined as "[a]ny loan on the security of pledged
goods or any purchase of pledged goods on condition that the pledged goods are left with the
pawnbroker and may be redeemed or repurchased by the seller for a fixed price within a fixed
period of time." ALA. CODE § 5-19A-2(3).  A pawn transaction grants a pawnbroker "a lien on the
pledged goods pawned for the money advanced and the pawnshop charge owed, . . . subject to the
rights of other persons who have an ownership interest or prior liens in the pledged goods." ALA.
CODE § 5-19A-10(a).  Pledged goods are "[t]angible personal property other than choses in action,

securities, or printed evidence of indebtedness, which property is purchased by, deposited with, or otherwise actually delivered into the possession of, a pawnbroker in connection with a pawn transaction." § 5-19A-2(6). An automobile title certificate that is offered as security in a pawn transaction qualifies as "pledge goods" that would make the transaction subject to the APA, even if the pledgor retains physical possession of the automobile. *See Floyd v. Title Exch. & Pawn, Inc.*, 620 S. 2d 576, 578-79 (Ala. 1993) (affirming the judgment of the trial court that concluded, where a person pawns an automobile certificate of title and retains possession of the automobile, "that transaction was a 'pawn transaction' within the meaning of the [APA]"); *see also Blackmon v. Downey*, 624 So. 2d 1374, 1376 (Ala. 1993) (reaffirming the holding in *Floyd* that "an automobile certificate of title is 'tangible personal property' within the meaning of the [APA]"). "As pawn transactions, title loans are generally considered to be nonrecourse loans that do not create personal debt on the part of a pawnor." *Complete Cash Holdings, LLC v. Fryer*, 297 So. 3d 1223, 1225 (Ala. Civ. App. 2019).

A pledgor has "no obligation to redeem pledged goods or make any payment on a pawn transaction." ALA. CODE § 5-19A-6. If "[p]ledged goods [are] not redeemed on or before the maturity date . . . fixed and set out in the pawn ticket . . . the pawnbroker [must hold the goods] for 30 days following that date . . . [for] rede[mption] or repurchase[ ] by the pledgor . . . ." § 5-19A-10(b). "Pledged goods not redeemed within 30 days following the originally fixed maturity date shall be forfeited to the pawnbroker and absolute right, title, and interest in and to the goods shall vest in the pawnbroker." § 5-19A-6.

The Agreement provides:

You shall have no obligation to redeem the Vehicle or make any payment on this Pawn. Nothing in this Agreement gives us any recourse against you personally other than our right to take possession of the Vehicle upon your default, and to sell or otherwise dispose of the Vehicle in accordance with the Alabama Pawn Shop

Act.

Doc. 3 at 90.  The Agreement defines "default" as when "[the pledgor] fail[s] to timely pay any amount payable hereunder when due," in which case TitleMax "may take possession of the Vehicle upon [the pledgor's] default."  *Id.*  Here, Mrs. Graham's payment was due on the maturity date, July 2, 2021, after which she would be in default but would have the right to redeem.  *Id.* at 89. The "default" described in the Agreement allows TitleMax to repossess the vehicle, but "absolute right, title, and interest in and to" the vehicle does not vest to TitleMax until thirty (30) days after the maturity date as prescribed by the APA.  § 5-19A-6.  The Grahams filed their Chapter 13 bankruptcy petition on June 11, 2021, prior to the maturity date and maintained possession of the vehicle.  Therefore, as of the filing date of the Grahams' bankruptcy petition, they maintained legal title to, and possession of, the vehicle, and those rights entered the bankruptcy estate.

TitleMax's main argument is the language of the Agreement shows the parties' intent for the Grahams to have only a right to redeem the vehicle.  Doc. 7 at 17-19.  TitleMax argues the Agreement references a pledgor's "exclusive right to redeem the Title by repaying the Pawn in full and complying with this agreement."  *Id.* (quoting Doc. 3 at 90).  However, the nature and existence of the debtor's right to property is determined by looking at state law," and pursuant to the APA, title to the vehicle would not vest to TitleMax until the redemption period expired and the Grahams retained the right to possess the vehicle.  *In re Lewis*, 137 F.3d at 1283 (internal quotation marks omitted).

Furthermore, the Agreement granted TitleMax a security interest in the vehicle.  "[P]awn transactions in which a debtor consensually grants a pawnbroker a security interest in goods (including title documents and the vehicles they represent) are secured transactions. . . ."  *Harkness v. EZ Pawn Ala., Inc.*, 724 So. 2d 32, 33 (Ala. Civ. App. 1998) (quotations marks omitted).  Article

9A of the Uniform Commercial Code ("UCC") regulates security interests in personal property and defines a "security agreement" as "an agreement that creates or provides for a security interest." ALA. CODE § 7-9A-102(a)(73). A "security interest" is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." ALA. CODE § 7-9A-201(35).

> To create a security interest, parties need only evidence an intent to establish a security agreement. No particular words need be used to evidence the security interest. Rather, the language of the instrument must simply lead to the logical conclusion that it was the intention of the parties that a security interest be created.

*Gibson v. Resolution Tr. Corp.*, 51 F.3d 1016, 1022 (11th Cir. 1995) (internal citations and quotation marks omitted). To perfect a security interest, a lienholder must apply for then obtain a certificate of title that contains the lienholder's name and address as the lienholder. ALA. CODE § 32-8-61(b).

Here, the agreement between TitleMax and Mrs. Graham is titled "Pawn Ticket and Security Agreement," the terms of which "grants [TitleMax] a security interest in the Vehicle and the Title." Doc. 3 at 89-90. The Court finds the Agreement between TitleMax and Mrs. Graham intended to create a security interest. Additionally, TitleMax perfected its security interest when it obtained a certificate of title that lists it as a lienholder. *Id.* at 96; *see* § 32-8-61(b). Therefore, TitleMax held a pawnshop lien and a security interest in the vehicle when the Grahams filed their bankruptcy petition.

A Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims." 11 U.S.C. § 1322(b)(2). Since the Grahams still held legal title to, as well as possession of, the vehicle and TitleMax held a security interest, TitleMax's rights may be modified under the Grahams' Chapter 13 plan, pursuant to § 1332(b)(2).

TitleMax argues the Court should apply the Eleventh Circuit's holding from *In re Northington*. However, like *In re Womack* discusses, the case is distinguishable from the facts at hand.

> The debtor in *Northington* "filed a Chapter 13 bankruptcy petition . . . [after he] defaulted on [his] loan by failing to repay in on time and . . . shortly before expiration of the redemption period." 876 F.3d at 1305. So the property of the debtor's estate consisted only of a right to redeem his pawned vehicle. Under the Georgia pawn law, which is materially indistinguishable from the Alabama Pawnshop Act, if the debtor's estate failed timely to redeem the vehicle, it would "be automatically forfeited to the pawnbroker by operation of law, and any ownership interest of the [debtor] . . . [would] automatically be extinguished as regards the pledged item." GA. CODE § 44-14-403(b)(3).

> . . . In *Northington*, because the debtor transferred his vehicle to the bankruptcy estate after the period to redeem commenced running, the Bankruptcy Code extended his redemption period "for a finite term of 60 days." 876 F.3d at 1306, 1313 (discussing 11 U.S.C. § 108(b)). The debtor could not avail himself of the automatic stay, 11 U.S.C. § 362(a), in *Northington*, because "anything temporarily stayed under the specific language of section 108(b) [can]not [be] indefinitely stayed by the more general language of section 362(a)." 876 F.3d at 1313 . . . .

> . . . In *Northington*, the debtor never invoked his right to redeem and forfeited his legal interest in the pawned vehicle. 876 F.3d at 1309-10. Because the debtor's contingent rights to title of an to possess his vehicle vested automatically in the pawnbroker, GA. CODE § 44-14-403(b)(3), the asset "dropped out of the bankruptcy estate," and no property interest existed for the debtor to modify. *Northington*, 876 F.3d at 1306.

*In re Womack*, -- F. App'x --, 2021 U.S. App. LEXIS 26127, at *8-9, 2021 WL 3856036, at *3.

Unlike the facts of *Northington*, here the Agreement had not matured as of the filing date of the Grahams' bankruptcy petition and the Grahams' held legal title to, and possession of, the vehicle. Further, the Court finds *In re Womack* persuasive especially as it was ultimately affirmed by the Eleventh Circuit. Therefore, the Court finds the Bankruptcy Court did not err.

## IV.    CONCLUSION

Based on the above, the judgment of the Bankruptcy Court **AFFIRMED**. Judgement is entered in favor of the Appellees and against the Appellants. It is further **ORDERED** that costs

are taxed against the appellants, for which execution may issue.

The Clerk of Court is **DIRECTED** to furnish a copy of this order to the bankruptcy court.

This case is closed.

**DONE** and **ORDERED** this the 29th day of September 2022.

s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE